UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAMON VICTOR CRIST,<br><br>            Plaintiff,<br><br>    v.<br><br>GRACE LLOYD; CITY OF MERIDIAN; MELISSA OWENS; ADA COUNTY; DON CLOUGH; STACY OXSEN; and BETH ERICKSON,<br><br>            Defendants. | Case No. 1:24-cv-00256-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Damon Victor Crist's initial complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that state a frivolous or malicious claim, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Plaintiff has since filed several motions to amend and serial amended complaints, along with other motions. Plaintiff's most recent pleading in his Third Amended Complaint ("TAC") (Dkt. 22), which the Court considers the operative complaint in this case. Having reviewed the Third Amended Complaint, the Court enters the following Order permitting Plaintiff to proceed on some of his § 1983 claims against Defendant Grace Lloyd.

1. **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" the defendant committed the unlawful act, meaning sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2. **Factual Allegations**

Plaintiff is an inmate currently held in the Ada County Jail. The events described in the Complaint occurred before Plaintiff was arrested. Plaintiff alleges he was arrested without probable cause on a charge of failing to register as a sex offender. He has never been convicted of a sex offense and was not actually required to register. Plaintiff was in custody on the failure-to-

register charge for nearly one month before the charge was dismissed. *TAC* at 18. Plaintiff's present detention at the jail appears to stem from unrelated charges.

At the time relevant to Plaintiff's claims, Plaintiff was a Utah resident who had been traveling back and forth to Idaho for work. Thus, although he was certainly in Idaho on several occasions for one to two nights at a time, Plaintiff states that at no time did he actually reside in Idaho. *Id*. at 2–3. Plaintiff alleges that, acting on an email tip from a former superintendent with the Utah Department of Correction, Meridian Police Officer Grace Lloyd engaged in an investigation as to whether Plaintiff had moved from Utah (where he was registered on Utah's kidnapping registry) and whether he was required to register as a sex offender in Idaho. *Id*. at 3–5.

Defendant Melissa Owens, a records specialist with the Idaho State Police, answered some questions about Idaho's sex offender registration requirements during Lloyd's investigation. Owens also confirmed to Lloyd that Plaintiff had made "no attempts . . . to alert Idaho of his presence." *Id*. at 6. Lloyd conducted a very short investigation and then arrested Plaintiff for failing to register as a sex offender—despite the fact he was not required to register. *Id*. at 4–7. Lloyd stated in her probable cause affidavit that Plaintiff "was found to be residing in Idaho for longer than 2 business days which required him to register." *Id*. at 6.

Plaintiff claims Lloyd's statement was fraudulent, and Lloyd lied about Plaintiff having an Idaho apartment. *Id*. at 18. Plaintiff asserts his *kidnapping* registration requirement in Utah did not require him to register on the *sex offender* registry in Idaho. Plaintiff also asserts only the Idaho State Police, not a police officer like Lloyd, is empowered to determine whether an individual is required to register as a sex offender in Idaho based on an out-of-state conviction.

Plaintiff sues Defendants Owens and Lloyd based on Lloyd's investigation and arrest of Plaintiff. Plaintiff also sues Ada County Sheriff's Deputies Don Clough, Stacy Oxsen, and Beth Erickson, though the TAC contains no specific allegations against these Defendants other than that they were aware of the initial email tip. *Id*. at 10. Finally, Plaintiff sues the City of Meridian and Ada County. Plaintiff asserts federal civil rights claims of unlawful arrest and false imprisonment, due process violations, and malicious prosecution. Plaintiff also brings emotional distress claims under Idaho state law.

**3.     Discussion**

   **A.     *Section 1983 Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to

terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205-09 (internal quotation marks omitted).

To bring a § 1983 claim against a local governmental entity—such as the City of Meridian or Ada County—a plaintiff must allege the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency

and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

   i. <u>The Complaint States Plausible False Arrest and False Imprisonment Claims against Defendant Lloyd Only</u>

False arrest claims are analyzed under the Fourth Amendment. That amendment "requires that arrest warrants 'be based upon probable cause, supported by Oath or affirmation.'" *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (quoting U.S. Const., amend. IV). Generally speaking, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

Probable cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Where an arrest is made pursuant to a warrant, the arrest violates the Fourth Amendment if "a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

The elements of a § 1983 claim of false arrest are as follows: "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal citation and punctuation omitted).

When a detention occurs as the result of a false arrest, a false imprisonment claim arises under the Fourteenth Amendment protection against deprivations of liberty without due process. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Under § 1983, a plaintiff must meet the elements of common law false imprisonment[1] and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff also must show the persons detaining him were involved in or aware of the wrongful nature of the arrest. *Id.* at 1526–27.

Plaintiff's Third Amended Complaint, liberally construed, appears to state colorable § 1983 claims of false arrest and false imprisonment against Defendant Lloyd. Lloyd's allegedly false statement in her probable cause affidavit that Plaintiff owned an apartment in Idaho gives rise to a plausible inference that a "reasonably well-trained officer" would have known Lloyd's affidavit failed to establish probable cause. *Malley*, 475 U.S. at 345.

The Complaint does not, however, state a plausible false arrest or false imprisonment claim against the other Defendants. Plaintiff's allegation that Defendants Clough, Oxsen, and Erickson knew of the initial email tip does not support a reasonable inference that they should have known of a lack of probable cause after Lloyd's investigation. All Defendant Owens did was answer questions asked by Defendant Lloyd about Idaho's sex offender registry; there is nothing to suggest Defendant Owens acted with a sufficiently culpable state of mind. *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Finally, the TAC does not plausibly allege the City of Meridian or Ada County had a policy, custom, or practice of false arrest or false imprisonment, as required by *Monell*.

---

[1] The elements of common law false imprisonment in Idaho are (1) restraint of the physical liberty of another (2) without legal justification. *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946).

        ii.        <u>The Complaint Does Not State a Plausible Due Process Claim</u>

The Due Process Clause of the Fourteenth Amendment prohibits state action depriving a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989).

If a plaintiff shows he had a liberty interest protected by the Due Process Clause, the question then becomes what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. Three factors inform whether an inmate has received the process to which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The "essence of due process" is notice and an opportunity to be heard. *Id*. at 348 (1976).

Plaintiff alleges he did not have sufficient notice that he was required to register as a sex offender in Idaho. This claim is implausible—the entire basis of Plaintiff's complaint is that he was *not* required to register.

Additionally, Plaintiff alleges he had a protected liberty interest in not being labelled as a sex offender. The Court assumes Plaintiff did have such an interest. However, it is clear from the TAC that he received all the process he was due.

Plaintiff was charged with failing to register as a sex offender. He had his day in court, and the charge was dismissed. This criminal proceeding, with all its attendant procedural protections,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

satisfied due process. *See Wolff*, 418 U.S. at 556 (describing a criminal prosecution as providing "the full panoply of rights" protected by the Due Process Clause).

Plaintiff's situation is unlike that described in *Neal v. Shimoda*, where the Ninth Circuit considered a due process claim challenging a parole eligibility requirement. 131 F.3d 818 (9th Cir. 1997). In *Neal*, an inmate who was convicted of a crime—but *not* a sex crime—was required to attend sex offender treatment in order to be considered for parole. The court determined the inmate had not been provided due process because he was "never . . . convicted of a sex offense and . . . never had an opportunity to formally challenge the imposition of the 'sex offender' label in an adversarial setting." *Id*. at 831. Here, Plaintiff *did* receive this opportunity and adversarial process, and he successfully challenged the imposition of the sex offender label. Thus, the Complaint fails to state a plausible due process claim.

        iii.        <u>The Complaint Does Not State a Plausible Malicious Prosecution Claim</u>

Plaintiff also alleges malicious prosecution. Malicious prosecution generally "does not constitute a deprivation of life, liberty or property without due process of law and, therefore, is not cognizable" under § 1983. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981). However, there is an exception to this general rule for prosecutions pursued "with malice and without probable cause" and undertaken "for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (alterations omitted).

Plaintiff has not plausibly alleged any Defendant acted with a purpose to deny Plaintiff a specific constitutional right. Thus, the Complaint fails to state a colorable claim for malicious prosecution.

### B. State Law Claims

Plaintiff also asserts state law claims of intentional infliction of emotional distress. A plaintiff bringing such a claim must establish four elements: "(1) the [defendant's] conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Evans v. Twin Falls Cnty.*, 796 P.2d 87, 97 (Idaho 1990). The fourth factor, that the distress is severe, requires the distress inflicted to be "so severe that no reasonable man could be expected to endure it." *Id.* (quoting Restatement (Second) of Torts, § 46 cmt. J). There generally must be "physical manifestations" of emotional distress for such distress to be considered severe. *Id.*

Plaintiff states that, as a result of Defendants' actions, he has "lost years with his daughter." *TAC* at 17. However, this allegation is belied by Plaintiff's own acknowledgment that he was in jail for less than one month on the failure-to-register charge. *Id.* at 18. Plaintiff also alleges he suffered suicidal ideation and his career was "likely" destroyed. *Id.* at 17. These allegations of emotional and reputational injury, unaccompanied by allegations of physical manifestations of distress, do not plausibly suggest extreme emotional distress. As a result, Plaintiff's state law claims must be dismissed.

### 4. Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee Plaintiff's claims will be successful. Rather, it merely finds some are plausible, meaning they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendant Lloyd may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Third Motion to Amend the Complaint (Dkt. 20) is **GRANTED**.

2. Plaintiff's First and Second Motions to Amend (Dkts. 8 & 14) are **MOOT**.

3. Plaintiff's Motion to Stay Initial Screening pending the filing of an amended complaint (Dkt. 13) is **MOOT**.

4. Plaintiff may proceed on his false arrest and false imprisonment claims against Defendant Lloyd. All other claims are **DISMISSED**, and Defendants Clough, Oxsen, Erickson, Owens, the City of Meridian, and Ada County are **TERMINATED** as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must

5.  Plaintiff's Motions for Service of Process (Dkts. 4, 10, and 16) are **GRANTED**. *See* 28 U.S.C. § 1915(d) ("The officers of the Court shall issue and serve all process . . . in [in forma pauperis] cases.").

6.  The Clerk of Court is instructed to forward a copy of the Third Amended Complaint (Dkt. 22), a summons, and a copy of this Order to the United States Marshal's Service, which is directed to serve Defendant **Grace Lloyd** at **1401 East Watertower Street, Meridian, Idaho 83642**, the address Plaintiff has provided for Defendant Lloyd. *Compl*. at 1.

7.  Plaintiff's Motions to Waive Bond (Dkts. 5, 11, 15, & 21) are **DENIED AS MOOT**. Plaintiffs proceeding in forma pauperis in federal court are not required to post bonds for state law claims, and Plaintiff has not been allowed to proceed on his state law claims in any event.

8.  Unless otherwise ordered, the parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued contemporaneously with this Order.

9.  Any amended pleadings must be submitted, along with a motion to amend, by the later of (a) 150 days after entry of this Order or (b) 150 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

---

reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

10. Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

11. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

12. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means a party has provided a document to the court, but the party did not provide a copy of the document to the other party to the litigation.)

13. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

14. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

15. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

16. Pursuant to General Order 324, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 4, 2024

_____
Amanda K. Brailsford
U.S. District Court Judge